RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 9/21/05

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHAWN MILLER, ET AL. | *CIVIL ACTION NO. 04-1250 c/w 05-189 |
| VS. | *MAGISTRATE JUDGE HILL |
| GUADALUPE GUERRA, ET AL. | *BY CONSENT OF THE PARTIES |

## REASONS FOR RULING

Pending before the court is the Plaintiffs' Motion to Apply Texas Substantive Law filed by plaintiffs Guadalupe and Amelia Guerra, individually, Guadalupe Guerra as administrator of the estate of Cindy Guerra, Amelia Guerra as former temporary guardian of Lisa Guerra, and Lisa Guerra, individually (collectively "Guerra"), Rene Garza and Patricia Garza, individually, and Rene Garza as administrator of the estate of Jennifer Garza (collectively "Garza"), and Graciela Marroquin as former temporary guardian of Jose Angel Alfaro, Jr., and Jose Angel Alfaro, Jr., individually (collectively "Alfaro"). [rec. doc. 42]. Opposition to the Motion has been filed [rec. doc. 47] to which plaintiffs have filed a Reply. [rec. docs. 53 and 55]. The defendants then filed a Reply to which plaintiffs have filed a Sur-Reply. [rec. docs. 65 and 67]. Intervenor, Baton Rouge General Medical Center ("BRGMC"), has also filed a Memorandum opposing plaintiffs' Motion [rec. doc. 51], to which plaintiffs have filed a Reply. [rec. doc. 54].

### FACTUAL AND PROCEDURAL BACKGROUND

The instant lawsuit (No. 05-189) was filed by Guerra, Garza and Alfaro in the United States District Court for the Southern District of Texas following an automobile

accident which occurred on Interstate 10 in St. Martin Parish, Louisiana on July 20, 2003. The accident occurred when a truck owned by Sorenson Moving and Storage, Inc. ("Sorenson")[1], which was transporting goods for Allied Van Lines, Inc. ("Allied"), ran into a number of vehicles, including the vehicle occupied by the Guerra, Garza and Alfaro family members.[2] The driver of the Allied truck, Wladyslaw Gorski ("Gorski"), allegedly fell asleep or otherwise became incapacitated at the wheel and rear-ended traffic which had slowed or stopped due a previous crash on the interstate, causing a chain-reaction type accident.

As a result of the accident, Cindy Guerra, Jennifer Garza and Gorski died. Jose Alfaro, Jr. and Guadalupe, Amelia and Lisa Guerra suffered severe burns. The burn victims were treated and hospitalized in Baton Rouge, Louisiana. Accordingly, the BRGMC has intervened in this lawsuit to assert a $1.2 million lien on plaintiffs' recovery.

According to the allegations in the pleadings and attachments thereto, the truck driven by Gorski was transporting goods from California to Florida. On July 20, 2003, Gorski arrived in Houston, Texas in the early morning hours, where he spent the night. After resting approximately ten and one-half hours, Gorski departed Houston at approximately noon. He made one stop in Louisiana later that day for approximately one

---

[1]Sorensen has been dismissed from this lawsuit.

[2]Persons injured in this accident who were in other vehicles have filed suit in Louisiana courts. These suits include the consolidated action entitled *Miller v. Wladyslaw*, 04-1250 (W.D.La. 2004), and two suits filed in the 16th Judicial District Court for St. Martin Parish, *Chad Brown v. Allied Van Lines, Inc.*, No. 67891, and *Ronquillo, et al. v. Transguard, et al.*, No. 67832. These two suits apparently remain pending in state court.

and one half hours. [O'Neill Report, pg. 10]. This accident occurred at approximately 5:20 p.m. that day. The plaintiffs' experts opine that Gorski was in violation of several federal driving regulations[3] which regulate the number of driving hours allowed in specific time periods, including the day before the accident and in the early morning hours the day of the accident while en route to Houston. Plaintiffs' experts further opine that even after Gorski's rest in Houston and Louisiana, while en route east to Florida at the time of the accident, Gorski was in violation of the 70 hours in 8 days maximum hours on duty rule.[4] [O'Neill Report, pg. 9-10, 12]. Plaintiffs argue that Gorski was first in violation of these federal regulations while still in Texas and that Allied's failure to stop Gorski from driving once he exceeded the allowable service hours in Texas, through proper monitoring of his route, constitutes a "sufficient corporate act occurring in Texas" for application of Texas law.[5]

Guerra, Garza and Alfaro are residents of Texas. Gorski was a resident of Florida. Sorensen is a Florida corporation with and its principal offices in Florida and no

---

[3] See 49 C.F.R. § 395.3(a)(1) (2003) (10 hour driving rule), (a)(2) (2003) (15 hour driving rule), and (b)(2) (2003) (70 hour/8day rule); O'Neill Report at pg. 9-10 and 12. The undersigned notes that this section was amended in the Code of Federal Regulations effective June 27, 2003. However, motor carrier and driver compliance was extended through January 4, 2004. See 68 FR 22456-01, 2003 WL 1955071, former 49 C.F.R. § 359.0 and 68 FR 22516.

[4] See 49 C.F.R. § 395.3(b)(2) (2003).

[5] Plaintiffs summarize their argument as follows: "Texas is where Allied failed to stop Wladyslaw Gorski from getting back behind the wheel of a tractor trailer. Gorski was sleep deprived and his continued driving was in violation of both Department of Transportation and Texas rules setting maximum duty hours. Allied possessed the technology to track Gorski and to communicate with him. Allied was grossly negligent in not using this technology to prevent the start of the trip that hours later resulted in the crash in Louisiana 123 miles from the Texas border." [rec. doc. 42, at pg. 2].

registered agent in Texas.[6] Allied is a Delaware corporation with its principal offices in Illinois and Indiana.

This case was transferred to this court by June 21, 2004 and January 25, 2005 rulings of the United States District Court for the Southern District of Texas, over the plaintiffs' objection, on Motion to Transfer Venue filed by the defendants pursuant to 28 U.S.C. §1404(a). In transferring this case, the Texas district court noted in its original ruling that "under Texas choice of law principles, much weighs in favor of applying Louisiana law under the most significant relationship test." [6-21-04 ruling, at pg. 9]. However, that court left the choice of law decision to this, the transferee, court. *Id.*

After transfer, this case was consolidated with the related suit, *Miller v. Wladyslaw*, 04-1250 (W.D.La. 2004), which had been removed to this court. All parties have consented to the exercise of this Court's jurisdiction by the undersigned.

In the instant Motion the Guerra, Garza and Alfaro plaintiffs argue that Texas substantive law, including Texas law providing for punitive damages in cases of gross negligence, should apply to their case. The defendants argue that Texas law should not apply to these particular plaintiffs, but rather that Louisiana law should be applied equally to all plaintiffs injured in this accident as Louisiana has the most significant relationship to the accident and provides for full compensation for all plaintiffs' alleged injuries.

---

[6]Sorensen has no hauling authority outside of Florida. Its trucks operate outside of Florida under Allied's interstate motor carrier license. Thus, Allied is deemed by law to be Gorski's statutory employer. See 49 U.S.C. §14102; 49 C.F.R. § 376.11-12.

4

For the following reasons, the Plaintiffs' Motion to Apply Texas Substantive Law is **DENIED**. Accordingly, Louisiana substantive law will be applied to all issues in the instant consolidated litigation.

## LAW AND ANALYSIS

Plaintiffs have invoked the diversity jurisdiction of the federal court under 28 U.S.C. §1332. Accordingly, as a general rule, the substantive law of the forum state applies. See *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Woodfield v. Bowman*, 193 F.3d 354, 359 fn.7 (5th Cir. 1999). Both parties agree that because this suit was transferred from Texas to this Louisiana district court pursuant to 28 U.S.C. §1404(a), Texas' choice of law rules determine the substantive law which will be applied to this action. *Van Dusen v. Barrack*, 376 U.S. 612 (1964); see also *Ferens v. John Deere Company*, 494 U.S. 516 (1990).

Both parties also agree that under Texas law, the instant choice of law question is governed by the "most significant relationship test" enunciated in the Restatement (Second) of Conflicts Section 6[7], in conjunction with Sections 145 and 146, applicable to tort and personal injury cases, respectively, and Section 175 applicable to wrongful death actions. See *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 674 (5th Cir. 2003) citing *Gutierrez v. Collins*, 583 S.W.2d 312, 318-319 (Tex. 1979).

---

[7]Section 6 sets out the general principles involved in an analysis of the "most significant relationship" test. Those factors include: (a) the needs of interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied.

5

Both Sections 146 (personal injury) and 175 (wrongful death) of the Restatement create a presumption that the law to be applied is the law of the state where the injury occurred, subject to rebuttal. If, with respect to a particular issue, some other state has a more significant relationship, to be determined under those principles set out in Section 6, then local law is ignored. To determine whether the more significant relationship exception applies in tort cases, the Restatement looks to the general tort section, Section 145, which lists four factors (contacts) which should be considered in applying the principles of Section 6. These factors are: (1) the place where the injury occurred; (2) the place where the injury causing conduct occurred; (3) the parties' residences, domiciles, places of incorporation or headquarters; and (4) the place where the relationship between the parties is centered.

With respect to damages, Section 171 provides that the "law selected by application of the rule of section 145 determines the measure of damages." More specifically, with respect to exemplary damages, the comments to Section 171 provide that the right to exemplary damages is determined by the law selected by application of the rule of Section 145. See §171 comment (d).

Analysis of the contacts set forth in Section 145 should not turn on the number of contacts, but rather on the qualitative nature of those contacts. There is no set formula for determining the significance of any particular contact. Instead, the court must weigh the relationship on a case by case basis. *Guitierrez*, 583 S.W.2d at 319; *Vizcarra v. Roldan*,

925 S.W.2d 89, 90 (Tex.App. El Paso 1996). Accordingly, the factors set forth in Section 145 are discussed below.

## I. Place of Injury

The place of injury is the most important contact unless the site of the injury is "fortuitous." See §145 comment (e). "Fortuitous" is not expressly defined. However, comment (e) to Section 145 states that the place of injury will not play an important role in the selection of the applicable law if "the place of injury can be said to be fortuitous *or when for other reasons* it bears little relation to the occurrence...." (emphasis added). Thus, in accordance with the plain language of the comment, "fortuitous" clearly means "bear[ing] little relation to the occurrence...." Here, in support of their fortuity argument, the plaintiffs cite product liability cases in which the failure of defective parts occurred during flight or in places other than the state of manufacture of the defective part or the state where the inadequate warnings for the product were issued. See e.g. *Torrington Co. v. Stutzman*, 46 S.W.3d 829 (Tex. 2000); *Baird v. Bell Helicopter Textron*, 491 F.Supp. 1129, 1139 (N.D.Tex. 1980). In air crash cases, the exact location of the crash has no real relation to the cause of the crash, whether defective design or fabrication. *Id.*; See also *Boomsma v. Star Transport, Inc.*, 202 F.Supp.2d 869, 875 (D.Wis. 2004) (distinguishing a land based accident from an air crash case because "an airplane flies high above the earth. When it crashes, the place where it actually comes to rest depends on the speed of the craft, its trajectory, the nature and timing of the accident, prevailing winds, and so

7

on."). The same is true for the other product liability cases cited by plaintiffs. These cases base the choice of law determination on the place of manufacture of a defective product. The location where a defectively manufactured product fails has no relation to the site where the fault, that is the faulty manufacture or design, occurs. See e.g. *Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242 (5th Cir. 1990); *Perry v. Aggregate Plant Products*, 786 S.W.2d 21 (Tex.App. San Antonio 1990). Rather, in these cases the fault occurs in the state of manufacture or design. In such a case, the site of the accident can truly be said to be fortuitous.

This action does not involve a defectively manufactured product or inadequate warnings. Therefore, the state interest in controlling corporate action in the manufacture or issuance of warnings is not implicated. This is a negligence action stemming from negligent driving on Louisiana highways. The cases on which plaintiffs rely for their fortuity argument are therefore distinguishable from cases, like the instant case, where an accident occurs as a result of fault occurring on a highway. In such a case, there is a high relationship between the situs and the parties. Accordingly, the site of such accident cases are not "fortuitous." See *Cates v. Creamer*, 2001 WL 1196058, *3 (N.D.Tex. 2001); *Boomsma*, 202 F.Supp.2d at 875; *Svege v. Mercedes Benz Credit Corp.*, 182 F.Supp.2d 226, 230-231 (D.Conn. 2002); *Karavokiros v. Indiana Motor Bus Lines*, 524 F.Supp. 358, 388-389 (E.D.La. 1981). See also *Perkins v. Dynasty Group Auto*, 2003 WL 22810452 (Tex. App. El Paso 2003); *Vizcarra*, 925 S.W.2d at 91.

The accident in the instant case occurred on a Louisiana interstate highway while the plaintiffs were voluntarily traveling on the highway and Gorski was driving through Louisiana on his scheduled route. The plaintiffs were injured (or killed) in Louisiana and received treatment for those injuries from Louisiana medical providers. The accident was investigated solely by Louisiana authorities. Under the facts of this case, it is more than mere fortuity that the accident and resulting injuries in this case occurred in Louisiana and not Texas.[8]

Moreover, the Third Circuit case cited by plaintiffs as persuasive authority for their position is distinguishable and therefore inapplicable to this case. In *Budget Rent-A-Car Systems, Inc. v. Chappell*, 407 F.3d 166 (3rd Cir. 2005), *pet. for cert. filed* 8-29-05, No. 05-281, the trial court held that neither Michigan nor New York had any interest in applying its law to a single vehicle accident which occurred in Pennsylvania after the driver of the vehicle fell asleep at the wheel. Thus, the court held that, by default, Pennsylvania law applied, despite the fact that neither party argued that Pennsylvania had any interest in the litigation, other than the fact that the accident occurred in that state. On appeal, the trial court was reversed. The court held that under Pennsylvania law, the New York paraplegic plaintiff would have no right of recovery against the rental car

---

[8]The undersigned also agrees with Judge Tagle, as discussed in her January 24, 2005 ruling, that plaintiffs' arguments concerning the fortuity of the accident's location apply with equal force to the federal driving regulation violations that plaintiffs' argue initially occurred in Texas. Under plaintiff's analysis, it was equally fortuitous that the alleged violations occurred while Gorski was driving in Texas. Had Gorski taken another route, taken additional rest stops or otherwise changed his daily activities during his trip, the violation of federal driving regulations could easily have occurred in any state through which he passed. [See 1-24-05 Ruling, at pg. 9-10].

company. The appellate court further held that contrary to the lower court's determination New York (like Texas and Louisiana here) had an interest in wholly compensating its injured citizens, and that interest overrode Michigan's interest in protecting national rental car companies, and, presumably, any unarticulated interest which Pennsylvania might have had. Thus, the court held that the law of the state which provided for full recovery of compensatory damages, New York, was to be applied. Here, as is more fully discussed below, Texas' interest in securing full compensation for its injured citizens will be satisfied by the application of Louisiana law because under Louisiana law, the plaintiffs are entitled to recover full compensatory damages for their injuries. That was not the case in *Chappell*. *Chappell* is therefore distinguishable, and is not persuasive authority as suggested by plaintiffs.

For the above reasons, this factor therefore weighs in favor of the application of Louisiana law.

## II. Place of the Conduct Causing the Injury

Louisiana is the place where the conduct causing the plaintiffs' injuries occurred because Louisiana is where Gorski either fell asleep, became disabled or was otherwise at fault when he ran into the slowed or stopped traffic on the interstate causing the chain-reaction type accident which injured (and killed) the plaintiffs. See *Cates*, 2001 WL 1196058, at *3 (holding that the conduct causing injury was the act of the driver falling asleep at the wheel in Texas, not the negligent rental of the vehicle in Florida); *Perkins*,

2003 WL 22810452, at *3 citing *Cates* (same); *Boomsma*, 202 F.Supp.2d at 875-876. See also *Vizcarra*, 925 S.W.2d at 91-92. Louisiana regulates the activities of drivers within its borders. Louisiana has no reason to defer to Texas for the regulation of the acts that directly caused this accident. Texas does not have an appreciable interest in applying its law to an automobile accident caused by negligent driving in a jurisdiction having its own laws regarding the operation of motor vehicles. Plaintiffs make no argument that whatever acts by Gorski that caused this accident are not equally regulated by Texas and Louisiana law.

The plaintiffs argue that the conduct causing injury occurred in Texas when Allied failed to stop its driver from continuing on his route using available monitoring systems. However, an equally good argument can be made that this same conduct occurred in Illinois, Indiana or any other remote location where Allied monitored Gorski's route via Allied's tracking system. [see Deposition of Sam Jameson and Theresa M. Swygart]. Moreover, to the extent that there was any violation of federal driving regulations in Texas, or more specifically, the regulation prohibiting driving more than seventy hours in an eight day period, that violation continued into the State of Louisiana. Like Texas, Louisiana has incorporated the federal motor carrier safety regulations into its state law. La. Admin. Code, title 33, pt. V, §10303. Thus, an equally meritorious argument exists that the same conduct which occurred in Texas also occurred in Louisiana, which violation of Louisiana law (as well as Texas law), was the direct cause of plaintiffs'

injuries. Thus, to the extent that there was a violation of the federal regulations in Texas, and even if some negligent conduct did occur in Texas, such conduct does not outweigh the acts or omissions which also occurred in Louisiana. Louisiana has the same interest as does Texas in enforcing federal driving regulations engrafted into its state law.

Additionally, to the extent that plaintiffs argue that Allied is directly liable for its negligent screening or hiring of Gorski, those allegations concern events or actions which occurred in 1999 when Gorski was hired by Allied, and years before the accident occurred in Louisiana. [See Morgan Report at pg. 4-8]. Moreover, any failure by Allied to screen Gorski's background prior to hiring him occurred in either Florida, Illinois or Indiana, not Texas. [See affidavits of Mark Davidson, Thomas Lambert, and Scott Sorenson].

The product liability cases cited by plaintiffs are distinguishable because in those cases, unlike the present case, the plaintiffs were able to demonstrate that the majority of the negligence or wrongdoing was sufficiently tied to Texas for application of Texas law. For example, in *Moorhead v. Mitsubishi Aircraft International, Inc.*, 639 F.Supp. 385 (E.D.Tex. 1986), rev'd in part on other grounds, 828 F.2d 278 (5th Cir. 1987), the allegedly defective airplane was manufactured by a corporation residing in Texas and the crash occurred in Texas where it caused the plaintiffs' injuries. Thus, the wrongdoing was the defective design and use of an unreasonably dangerous product in the State of Texas. *Id.* at 391. Similarly, in *Crissman v. Cooper Industries*, 748 S.W.2d 273

(Tex.App. Dallas 1988), a defective trailer was sold and distributed in Florida where it was exclusively used and where it subsequently caused injury. The wrongdoing was the marketing, distribution and use of the defective product. *Id.* at 278. Florida law was held to apply. The fact that the defendant manufacturer had its principal place of business in Texas was not sufficient to apply Texas law. *Id.* at 277.

Under the present facts and in light of the above discussion, the majority of the alleged negligence is not sufficiently tied to Texas so as to apply Texas substantive law, nor is the complained of conduct directly tied to Texas. In the context of this case and under these facts, the complained of conduct of Allied may have supplied a "but for" cause of the accident, but there are several "but for" causes for this accident. Any such act in Texas is far too attenuated to be the direct, legal, or proximate cause of the plaintiffs' injuries. See *Vasquez*, 325 F.3d at 674. To accept the plaintiffs' argument minimizes, and in effect ignores, the majority of the negligent conduct which occurred in Louisiana immediately prior to the accident. This court cannot ignore these acts. In sum, the plaintiffs' alleged "but for" cause is too far removed and reaches too far back in the causal chain from the resulting accident in Louisiana, which accident directly caused the plaintiffs' injuries.

For the above reasons, this factor weighs in favor of the application of Louisiana law.

## III. Parties' Domicile, Residence, Place of Incorporation and Business

Plaintiffs Guerra, Garza and Alfaro are residents of Texas. Gorski was a resident of Florida. Allied is a Delaware corporation with its principal offices in Illinois and Indiana.[9]

Texas has an interest in making sure that its residents are fully compensated for any damages sustained in Louisiana. See *Torrington*, 46 S.W.3d at 850. However, under Louisiana law the plaintiffs are entitled to full recovery of compensatory damages. Therefore, Texas' interest is satisfied by application of Louisiana law. See *In re Disaster at Detroit Metropolitan Airport*, 750 F.Supp. 793, 805 (E.D.Mich 1989) (citations omitted) ("Once its plaintiffs are made whole by the recovery of compensatory damages, the interest of the plaintiff's state of domicile [in assuring that its claimants are adequately compensated for their injuries] is satisfied."). The Texas Civil Practice Code provides that exemplary damages, which include punitive damages, are not awarded as compensatory damages. Tex.Civ.P.R. Code Ann. §41.001(5) (Vernon's Supp. 2005); *Owens-Corning Fiberglass Corp. v. Malone*, 972 S.W.2d 35, 39-40 (Tex. 1998); See also *In re Disaster at Detroit Metropolitan Airport*, 750 F.Supp. at 805. Therefore, the unavailability of exemplary damages under Louisiana law does not frustrate Texas' policy of fully compensating its resident victims for their injuries.

---

[9]The place of incorporation and principle place of business of Sorensen is not discussed as it is no longer a party to this action and is not legally considered Gorski's employer. See fns. 1 and 6, *supra*. However, even considering Sorensen, this factor weighs in favor of application of Louisiana law as it is not incorporated in, and has no offices in, Texas.

Finally, under Texas law, punitive damages are to punish and deter wrongful conduct. Tex.Civ.P.R. Code Ann. §41.001(5) (Vernon's Supp. 2005); *Owens-Corning Fiberglass Corp.*, 972 S.W2d at 39-40. Texas does not have a significant interest in punishing or deterring wrongful conduct of non-Texas domiciliary corporations who do not cause damage in Texas, whereas Louisiana has a significant and strong interest in regulating the operation of motor vehicles on its highways and uniformly compensating victims of wrongful conduct committed on those highways by non-domiciliary corporations which cause damage in Louisiana. Moreover, Louisiana has a strong public policy *against* the award of exemplary and punitive damages except in very limited circumstances provided for by the Legislature. See *Ross v. Conoco, Inc.*, 828 So.2d 546, 555 (La. 2002). None of those circumstances are present here. This policy is grounded in Louisiana's interest in protecting its judicial system from what it considers inherently speculative awards. *Karavokiros*, 524 F.Supp. at 386-387; *Lee v. Ford Motor Co.*, 457 So.2d 193, 194-195 (La.App. 2d Cir. 1984). Therefore, allowing plaintiffs to recover punitive damages under Texas law would undermine Louisiana's strong policy against such an award. Thus, it does not appear that Texas has any interest in applying its punitive damage law, and to the extent that any such interest exists, that interest is not sufficiently strong such that it should override the interests of Louisiana in the application of its law.

For these reasons, this factor also weighs in favor of application of Louisiana law.

## IV. Place where Relationship between the Parties is Centered

Here, there was no relationship between the parties prior to their collision on July 20, 2003. Accordingly, this factor is inapplicable. See §145, comment subsection (2) ("When there is a relationship between the plaintiff and the defendant and when the injury was caused by an act done in the course of the relationship, the place where the relationship is centered is another contact to be considered."). However, to the extent any "relationship" between the parties existed, that "relationship" consisted of an accident in Louisiana and is therefore centered in Louisiana.

In sum, all three of the applicable factors set forth in Section 145 weigh in favor of the application of Louisiana law to all issues involved in this litigation.[10] The plaintiffs' injuries were sustained in Louisiana and the most substantial and direct conduct causing injury to these plaintiffs occurred in Louisiana. Although plaintiffs Guerra, Garza and Alfaro were residents of Texas, Texas' interest in fully compensating its resident victims will be satisfied by the application of Louisiana law. Therefore, Texas' interests do not override the interests of the State of Louisiana in regulating its highways and uniformly compensating all victims of the same wrongful conduct committed on those highways by non-domiciliary corporations which caused damage in Louisiana, despite the plaintiffs' residential differences.

---

[10]The undersigned notes the argument set forth by intervenor BRGMC regarding the "disingenuous" nature of plaintiffs' argument in light of their request for application of Louisiana law to intervenor's recovery. [See rec. doc. 51]. The undersigned agrees with the plaintiffs that in an appropriate case, different states' laws can apply to different issues in the case. However, that rule of law is not relevant here because in accordance with the above analysis, the court finds that Louisiana law applies to all issues in this case.

Having analyzed the contacts to be considered under Section 145 of the Restatement (Second) of Conflict of Laws, the court briefly turns to the general policy concerns set forth in Section 6 of the Restatement which bolster this court's conclusion, keeping in mind that some of these policy concerns have been covered in the foregoing discussion of the Section 145 factors.

As previously discussed, the relevant policies of the forum and other interested states weigh in favor of application of Louisiana law. See §6(2)(b) and (c). Texas' interest in compensating its injured residents will be satisfied under Louisiana law and its interest in punishing or deterring wrongful conduct by non-domiciliary corporations which is not specific to Texas is outweighed by Louisiana's interest in regulating the operation of motor vehicles on its highways and uniformly compensating victims of wrongful conduct committed on those highways which cause damage in Louisiana to both Louisiana and Texas residents, as well as Louisiana's strong public policy against the award of speculative exemplary and punitive damages in the circumstances presented herein.

The policies of the particular field of law also favor application of Louisiana law. See §6(2)(e). This is a tort suit sounding in negligence for recovery of personal injury and wrongful death damages. The court has concluded that the plaintiffs' injuries were sustained in the State of Louisiana, the situs of the accident. The presumption in Sections 146 (personal injury) and 175 (wrongful death), that the law to be applied is the law of

the state where the injury occurred, has not been rebutted. Louisiana has the greater interest in resolving this tort suit which was primarily, immediately and directly caused by wrongful conduct committed on a Louisiana highway, when Gorski crashed into the rear of other vehicles who, like Gorski, were availing themselves of this State's highway system. Finally, not permitting recovery of punitive damages will not violate the primary focus of tort law, to fully compensate injured persons, because by definition, punitive damages are beyond just compensation.

With respect to the justified expectations of the parties, the Guerra, Garza and Alfaro plaintiffs could not rationally expect this dispute to be governed under Texas law. See §6(2)(d). To the contrary, they should fully expect that Louisiana law will apply to this motor vehicle accident which occurred while they voluntarily traveled through Louisiana on Louisiana highways, and which accident was investigated by Louisiana authorities with emergency and long-term aid provided by Louisiana medical personnel.

Finally, the policy concerns of certainty, predictability, uniformity of result and ease in determination and application of the law to be applied favor application of Louisiana law. See §6(2)(f) and (g). This accident did not solely involve Texas residents Guerra, Garza and Alfaro. Rather, this accident involved a total of eleven vehicles, the majority of which were driven and occupied by Louisiana residents.[11] In addition to the present lawsuit, three additional lawsuits have been filed in Louisiana state and federal

---

[11] The State of Louisiana Uniform Motor Vehicle Traffic Crash Report reveals that seven vehicles were driven by Louisiana residents, four of which transported Louisiana passengers.

courts[12], one of which has been consolidated with the present action, and all of which will presumably be resolved under Louisiana law. Thus, certainty, predictability and uniformity of result strongly suggest that Louisiana law apply to the instant case involving all plaintiffs. Likewise, ease in determination and application of law favor application of Louisiana law as well.

In conclusion, this court finds that both the policy considerations expressed in Section 6 and the specific factors expressed in Section 145 of the Restatement (Second) of Conflict of Laws compel the conclusion that Louisiana law has the more substantial relationship to the parties and issues in this lawsuit. Accordingly, this court holds that the substantive law of Louisiana applies to all issues involved in this litigation.

Signed this 21 day of September, 2005 at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

---

[12] See fn. 2, supra.