# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

SHAWN MILLER, ET AL.                *CIVIL ACTION 04-1250 c/w 05-189

VS.                                                       *MAGISTRATE JUDGE HILL

GORSKI WLADYSLAW ESTATE, ET AL.   *BY CONSENT OF THE PARTIES

## ORDER

On November 15, 2006, an evidentiary hearing was held on the Motion to Exclude or Limit Dr. Douglas G. Smith filed by Illinois National Insurance Company ("Illinois National"). [rec. doc. 171]. Considering the Motion, the Oppositions thereto [rec. doc. 266], Illinois National's Reply [rec. doc. 285], the attachments and exhibits submitted by the parties, the testimony and evidence presented at the hearing, the arguments of counsel, and the law recited on the record by the court, the Motion to Exclude or Limit the testimony of Dr. Douglas G. Smith [rec. doc. 171] is **DENIED**.

Illinois National challenges Dr. Smith's qualifications and the reliability of his testimony on the likelihood of complications which may arise from Lisa Guerra's ("Guerra's") and Jose Alfaro, Jr.'s ("Alfaro's") burns. Dr. Smith intends to opine that both will likely require amputations in the future, as a result of loss of protective sensation, repeated episodes of skin breakdown and ulcerations, poor vascular supply and poor wound healing, which will eventually lead to infections such as cellulitis and osteomyelitis. Illinois National further contends that Dr. Smith does not treat burn patients until after the conditions requiring amputation have developed, and that he has

insufficient experience and training in treating burn patients in the "acute phase" of injury when the complications which likely warrant amputation develop, or the conditions which predate such conditions are present.. Additionally, Illinois National contends that Dr. Smith's opinions on the likelihood of complications necessitating amputation are not reliable because due to the high mortality rate of severe burn patients prior to the development of new burn care techniques, there is no medical literature or peer reviewed studies dealing with patients with conditions similar to those of Alfaro and Guerra to support Dr. Smith's opinions or which demonstrate that his opinions have been, or can be, otherwise tested. Moreover, Illinois National contends that Dr. Smith cannot rely on literature dealing with complications arising in diabetics in drawing his conclusions because, according to defense expert Dr. Vasconez, complications in diabetics are not comparable to those suffered by burn patients. Thus, Illinois National argues that Dr. Smith should not be permitted to discuss the likelihood that complications warranting amputation will likely arise in the future.

During the *Daubert* hearing Dr. Smith testified as to his extensive experience with both acute and long-term burn patients. Dr. Smith practices at a Level I trauma and burn center for a five state region. Accordingly, he works with the burn team on a weekly basis, assessing burn patients in the hospital and rendering opinions to these patients and the burn physicians on the risk of future amputation as well as options for limb salvage. He also sees similar patients in his clinic over an extended period of ten to thirty years or

more, post-trauma, taking steps necessary to extend the time each patient can function at one level before function deteriorates to the point that surgery is required. Thus, Dr. Smith treats burn patients at all stages of their injury, including the acute and long-term stages.[1]

Given Dr. Smith's extensive hands-on experience over this meaningful period of time, revealed in his testimony at the hearing and the exhibits and attachments submitted by the parties, Dr. Smith has clearly developed a working expertise which qualifies him to opine on the likelihood of complications which may arise from Guerra's and Alfaro's burns, including the risk of future amputation. *See Jones v. Lincoln Electric Co.*, 188 F.3d 709, 724 (7th Cir. 1999); FRE 702. Clearly, experts may testify within the realm of their experience. *See Skidmore v. Precision Printing and Packaging, Inc.,* 188 F.3d 606, 618 (5th Cir. 1999); FRE 702, Adv. Comm. Notes (2000) ("Rule 702 expressly contemplates that an expert may be qualified on the basis of experience."); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999); *State v. Wommack*, 770 So.2d 365, 374 (La. App. 3rd Cir. 2000). Such testimony is not the sort of "junk science" *Daubert* blocks. *Skidmore,* 188 F.3d at 618.

---

[1] *See also* Dr. Smith's July 14, 2006 letter to Mr. Mithoff [rec. doc. 266, Ex. 22], stating that "I provide orthopedic care to burn patients at [the burn center] on a weekly basis, who have or are at risk for limb loss and help manage the patients from that aspect of their injuries in both the acute and rehabilitative phase of treatment" and that in addition to providing acute and immediate rehabilitative care to burn patients, Dr. Smith continues to treat patients who are decades out from their original injuries and acute care, including patients who have burn scarring, skin grafts, and loss of sensation; Deposition of Dr. Smith [rec. doc. 266, Ex. 24 at p. 35-36, 45-47] stating that Dr. Smith treats three to four patients every year whose burns are comparable to the plaintiffs, and that he amputates about five long-term burn patients a year.

Additionally, Dr. Smith's opinions on the likelihood of complications necessitating amputation are reliable; Illinois National's objections go to the weight of Dr. Smith's testimony, not its admissibility. *See Primrose Operating Co. v. National American Insurance Co.*, 382 F.3d 546, 562 (5th Cir. 2004)*; United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077-78 (5th Cir. 1996); *Daubert*, 113 S.Ct. at 2798. Dr. Smith's opinion is based on recognized risk factors that are accepted within the mainstream of medicine, as well as by both Dr. Smith and Lafayette orthopedist Dr. J. Lee Leonard[2], and which have been written about in patients with chronic conditions such as diabetes and leprosy.[3] Dr. Smith explained that although these chronic conditions arise from underlying causes different than those of Guerra and Alfaro, the presence of these same risk factors in burn patients, diabetics and leprosy pattients lead to the same end result. In sum, it is not the underlying condition, namely a burn, diabetes or leprosy, that causes amputation, but rather it is the presence of the risk factors which exist as a result of these conditions that cause amputation. Thus, this literature supports and is consistent with Dr. Smith's opinions. Clearly, such expert testimony based on an expert's specialized knowledge, experience and observation while supported by evidence in the scientific community is

---

[2]*See* Deposition of Dr. J. Lee Leonard [rec. doc. 295, Ex. A, at pg. 15-16, 45-46].

[3]*See* rec. doc. 266, Exs. 57 and 58, E.J. Boyco, *et al.*, *"A Prospective Study of Risk Factors for Diabetic Foot Ulcer"*, 22 Diabetes Care 1036-42 (1999), R.E. Pecoraro, *et al.*, *"Pathways to Diabetic Limb Amputation: Basis for Prevention"* 13 Diabetes Care 513-521 (1990). *See also* rec. doc. 266, Ex. 59, P.W. Brand, *"Management of the Insensitive Limb"*, 59 Physical Therapy 8-12 (1979).

4

admissible. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 289, 249-250 (5th Cir. 2002) (citations omitted).

Finally, the court notes that the plaintiffs do not intend to ask Dr. Smith to quantify by a percentage what he believes the likelihood of amputation in Guerra or Alfaro to be. Rather, plaintiffs intend solely to ask Dr. Smith whether it is more probable than not that Guerra and Alfaro will need amputations in the future.

The *Daubert* analysis should not supplant trial on the merits, nor should it serve as a replacement for the adversary system. *Pipitone*, 288 F.3d at 461; F.R.E. 702, Adv. Comm. Notes (2000). In this case, the court concludes that the jury is entitled to hear Dr. Smith's opinions. Vigorous cross-examination of Dr. Smith and presentation of contrary evidence is the appropriate means of attacking Dr. Smith's admissible expert opinion evidence. *See Daubert*, 113 S.Ct. at 2798.

Signed at Lafayette, Louisiana on November 27, 2006.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

5